UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHEREEN BOBROWSKY,

                              Plaintiff,

       -v-

"THE YONKERS COURTHOUSE" (ITS STAFF,
CLERKS, AND ALL THOSE WHO CAUSED THE
RECUSAL OF THE COURT AND ALL JUDGES)
AND UNKNOWN JOHN DOES NECESSARY FOR
REQUESTED RELIEF,

                              Defendants.

---

Case No. 10-CV-1846 (KMK)

OPINION AND ORDER

---

KENNETH M. KARAS, District Judge:

       Shereen Bobrowsky ("Plaintiff"), proceeding pro se, brings this action against "The

Yonkers Courthouse," "its staff, Clerks, and all those who caused the recusal of the Court and all

Judges," as well as "unknown John Does necessary for requested relief," for violations of the

First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, pursuant to

42 U.S.C. § 1983, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,

stemming from a series of proceedings before, and orders issued by, New York State courts.

Specifically, Plaintiff asks the Court to: (1) vacate her Yonkers City Court conviction for

criminal contempt; (2) order that hearings and depositions be held on protective orders entered

against her by a New York Family Court and the Yonkers City Court, and void those orders; (3)

void an order banning her from the Yonkers courthouse, except for her scheduled appearances;

(4) remove her pending state criminal case and associated hearings, and all other matters

originating in Yonkers, to federal court; and (5) bar the New York State Attorney General from

defending the judges due to an alleged conflict of interest.[1]  To date, Plaintiff has individually

served three Defendants: the Honorable Michael A. Martinelli, Chief Judge of the Yonkers City

Court ("Judge Martinelli"); the Honorable Brian Hansbury, City Court Judge, White Plains

("Judge Hansbury"), and the Honorable Alan D. Scheinkman, Justice of the Supreme Court and

Administrative Judge for the 9th Judicial District ("Justice Scheinkman"), (collectively,

"Defendants").  Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal

Rules of Civil Procedure 12(b)(1) and (6).  For the reasons stated herein, the motion to dismiss is

granted.

## I.  Background

For purposes of deciding the instant motion to dismiss, the Court accepts as true the

allegations contained in Plaintiff's Complaint, described below, and construes them in the light

most favorable to Plaintiff.  Many of the events and allegations set forth in the Complaint are

unrelated to the Defendants served in this action; however, in light of Plaintiff's pro se status, the

Court will attempt to explain the full factual scenario as described by Plaintiff in her pleadings.

### A.  Factual Background

The events at issue in this action date back to a longstanding family dispute between

Plaintiff, her mother Lillian Bobrowsky ("Lillian"), and her brother Jacques Bobrowsky

---

[1] As explained *infra* Section I.B, Plaintiff filed her Complaint and an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order in this action simultaneously.  In Plaintiff's Order to Show Cause, she also asked the Court to: (1) order the Westchester County District Attorney to (a) not prosecute Plaintiff for alleged violations of the protective order and (b) refer Plaintiff's allegations of mortgage fraud, police misconduct, and other wrongdoing to the New York Attorney General, New York County District Attorney, and/or Department of Justice; and (2) order that Plaintiff's name be cleared and that Plaintiff and her family obtain counseling.  These requests were not made in the Complaint, and the Court denied Plaintiff's Order to Show Cause on April 15, 2010.  (Dkt. No. 10.)

("Jacques"), over the property located at 88 Fanshaw Avenue in Yonkers, New York ("the property"), and an alleged mortgage and title fraud that Plaintiff believes was perpetrated against her by an attorney, Herbert Posner ("Posner"), who represented Lillian and Jacques.  As part of this dispute, Plaintiff has sued Posner, Lillian, and Jacques in Westchester Supreme Court, in a case assigned index number 20537/2006, that is still pending.

### 1.  Protective Order

On June 23, 2006, the Honorable David Klein ("Judge Klein") of the Family Court of the State of New York issued a protective order (the "6/23/06 Protective Order") requiring Plaintiff to: (1) "[r]efrain from assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats, or any criminal offense against Lillian Bobrowsky," and (2) "stay away from the bedroom of Lillian Bobrowsky," until June 23, 2007.  (Compl. Ex. B.)  Plaintiff claims that her mother never requested such an order, that there were never any threats or violence to justify such an order, and that no testimony was taken prior to entering the order. (Compl. 11, 25.)  Plaintiff argues that the protective order is "unconstitutionally vague" because it failed to list what specific conduct was allowed or disallowed, and was issued by a court without subject matter jurisdiction, based on a "fraudulent deed allegation."  (*Id.* at 10, 25-26.) According to Plaintiff, Westchester courts have refused to entertain a hearing on this protective order, and the order "was continually re-issued with no hearing."  (*Id.* at 10.)

### 2.  Plaintiff's Arrest and Conviction

Plaintiff alleges that on July 15, 2006, she "called 911 when her visiting brother was intoxicated," but when the police arrived at the property, they instead arrested her for violating

the order of protection.  (*Id.* at 9-10, 32; Compl. Ex. E.)[2]  Subsequently, Plaintiff was criminally

charged with violating the 6/23/06 Protective Order, in a case identified as "No. 06-4495."

Plaintiff alleges that the violation only involved a "stare" or angry look that she gave her mother.

(Compl. 9.)  In a "statement . . . written for [Lillian] by officer Renzi," Lillian stated that

Plaintiff "stood in front of my bedroom and stared angrily at me," for an hour and a half, which

"caused me to feel intimidated and fearful for my safety."  (Compl. Ex. D.)  Lillian also stated

that she wanted to press charges for violating the order of protection.  (*Id.*)  Case No. 06-4495

was originally brought before Judge Charles Wood ("Judge Wood") in Yonkers City Court.

(Compl. Exs. N3-N5.)  On October 16, 2006, Plaintiff's attorney, Jose Muniz ("Muniz"), filed a

motion to dismiss the charges.  (Compl. Ex. "Motion to Dismiss.")  On November 28, 2006,

Muniz also filed a motion to have the case removed to White Plains Supreme Court, arguing

that: (1) the Yonkers City Court lacked jurisdiction to subpoena evidence and witnesses outside

of Westchester County, and (2) there was a history of bias against Plaintiff at several Yonkers

agencies, including the courts; according to Plaintiff, the "Yonkers Courts refused" to grant the

removal request.  (Compl. Ex. "Change Venue"; Compl. 7, 25.)

---

[2] Plaintiff alleges that thirty-five officers came to the house, but none would take her report.  (Compl. 10.)  According to Plaintiff, this was part of a pattern of police retaliation undertaken after she reported that a police officer, Dean Renzi ("Renzi"), refused to arrest a man who assaulted her on February 28, 2006, and that the Yonkers Police Department failed to properly investigate the matter, as well as other incidents she reported.  (*Id.* at 9, 10, 20, 32; Compl. Ex. A.)  Plaintiff claims that Renzi is the officer who arrested her for violating the protective order.  (Compl. 32.)  As explained *infra* note 15, Renzi and the Yonkers Police Department have been sued in two other federal actions brought by Plaintiff, one that was dismissed by the Honorable Stephen C. Robinson, *see Bobrowsky v. City of Yonkers*, No. 07-CV-8817 (S.D.N.Y. dismissed May 16, 2008), and in one that was dismissed by the Honorable Richard Owen, *see Bobrowsky v. City of Yonkers*, No. 08-CV-11302 (S.D.N.Y. dismissed Mar. 29, 2011).

On August 9, 2007, Plaintiff filed a pro se order to show cause in Yonkers City Court to dismiss the charge and to dismiss other purportedly outstanding bench warrants stemming from alleged city code violations. (Compl. Ex. O.) According to Plaintiff, Judge Thomas Daly ("Judge Daly") granted a partial decision on this order to show cause that dismissed the erroneous bench warrants on speedy trial grounds but did not address her other arguments; subsequently, Plaintiff claims that a "motion for partial reargument was re-entered and was improperly put before a different judge," Judge Robert Cerrato ("Judge Cerrato"). (Compl. 7; Pl.'s Order to Show Cause for Prelim. Inj. and TRO ("OSC") unnumbered pages 4-5.)

On October 17, 2007, Plaintiff was convicted of criminal contempt in the second degree for violating the 6/23/06 Protective Order in a trial presided over by Judge Michelle Graffeo; Defendant Judge Martinelli sentenced Plaintiff on May 23, 2008. (Decl. of Susan Anspach ("Aspach Decl.") Ex. 1, at SM-1.) As part of Plaintiff's sentence, Defendant Judge Martinelli issued an order of protection (the "5/23/08 Protective Order") directing Plaintiff to stay away from Lillian and Lillian's home and to refrain from any communication or contact with Lillian. (Compl. Ex. I.)[3] The order is to remain in effect until May 23, 2013, although it can be modified upon submission of a superseding Family Court order. (*Id.*) Plaintiff's conviction was affirmed on May 4, 2009, by the Appellate Term in an opinion by Justice Kenneth Rudolph, Justice Melvyn Tanenbaum, and Defendant Justice Scheinkman.[4] *People v. Bobrowsky*, 886 N.Y.S.2d

---

[3] The other terms of Plaintiff's sentence, if any, have not been provided to the Court.

[4] Plaintiff alleges that she had asked that Defendant Justice Scheinkman not handle the appeal of her conviction "due to the appearance of impropriety" caused by Justice Scheinkman being a partner in the Debello law firm, which in 2006 had declined to represent Plaintiff because it did business with Posner; thus, Plaintiff "felt [Justice] Scheinkman was in conflict." (OSC unnumbered page 5.)

71 (App. Term 2009).  The Court of Appeals denied Plaintiff leave to appeal, *People v. Bobrowsky*, 918 N.E.2d 965 (N.Y. 2009), and denied reconsideration, *People v. Bobrowsky*, 922 N.E.2d 916 (N.Y. 2010).

Plaintiff appears to allege that the 5/23/08 Protective Order is unconstitutional because it bans her from the property, which Plaintiff claimed to, and did in fact own.  (Compl. Ex. J, at 1; *see also Bobrowsky v. City of Yonkers*, No. 07-CV-8817, slip op. at 5 (Dkt. No. 17) (S.D.N.Y. May 16, 2008) (noting that in January 2008, a New York State Supreme Court justice decided that Plaintiff is the fee simple owner of the property).)[5]  Plaintiff alleges that she was removed from her home in this manner without a hearing, which she was told could not be held because of supposed title and city code issues.  (Compl. 14-15.)[6]

### 3.  Plaintiff's December 2009 Arrest

On November 23, 2009, Plaintiff filed a motion pursuant to New York Criminal Procedure Law § 440.10 (the "440 motion") to vacate the 5/23/08 Protective Order and her

---

[5] Plaintiff alleges that Posner was involved in the events leading up to the issuance of the 6/23/06 Protective Order and in convincing Lillian to complain about Plaintiff's violation of the order, resulting in Plaintiff's conviction.  (Compl. 11.)  Plaintiff points to several e-mails written by Posner regarding the family dispute over the property, one of which states that "until [the] matter is resolved, and without a court order, [Plaintiff] is not to be allowed to gain access to the house."  (Compl. Ex. L2, at 2; Compl. Ex. L3.)  Plaintiff also appears to allege that Posner has committed acts of title, tax, mail, and mortgage fraud against her.  (Compl. at 15-16.)

On May 20, 2009, a state Administrative Law Judge ("ALJ") revoked Posner's notary license after finding that Posner witnessed the signing of a bargain and sale deed in which Lillian conveyed title of the property to Jacques, even though Lillian had previously deeded the property to herself and Plaintiff, and later had transferred title to Plaintiff alone, reserving a life estate for herself.  (Compl. Ex. H2.)  As a result of these actions, Posner resigned as an attorney on August 20, 2009, and subsequently was disbarred.  (Compl. Ex. P.)  Plaintiff sued Posner in her previously filed federal action that was dismissed by Judge Owen.

[6] According to Plaintiff, these alleged city code violations were acts of retaliation by Yonkers Corporation Council Laurence Porcari ("Porcari").  (Compl. 15.)  Plaintiff sued Porcari in her previous federal action that was dismissed by Judge Robinson.

conviction, and a return date was set for December 4, 2009.  (*Id.* at 21; Compl. Ex. J.)[7]  It appears that Plaintiff sued and served the Westchester County District Attorney and Defendant Judge Martinelli with her 440 motion.  (Compl. 21.)  On December 1, 2009, a Westchester County Assistant District Attorney requested an adjournment until January 8, 2010, which was granted.  (Compl. Ex. M1.)  Plaintiff next alleges that when she appeared at the scheduled conference on December 4, 2009, Judge Cerrato adjourned her case for one month "without reason or any input from [Plaintiff] as a pro se defendant," and declined to let her put a statement on the record.  (Compl. 7; OSC unnumbered page 4.)[8]  When Plaintiff requested a "second call," Plaintiff claims that she "was immediately surrounded by 4 court officers with no words spoken as if it were planned," "dragged out to the back room of the court and arrested," called "'the mouth, the troublemaker, the complainer'" by a court officer, and accused of criminal contempt.  (Compl. 21.)

A misdemeanor information was filed by Court Officer Lawrence Lonesome ("Lonesome") on December 4, 2009, charging Plaintiff with two counts of criminal contempt in the second degree, one count of resisting arrest, one count of obstructing governmental administration in the second degree, and one count of disorderly conduct.  (Compl. Ex. T, at

---

[7] Plaintiff alleges that "[i]mproper conduct that occurred during the trial which does not appear on the record" warranted reversal of her conviction, and that she was prejudiced by not being allowed pretrial, evidentiary, or post-trial hearings.  (Compl. 28.)  Plaintiff also claims that she was prejudiced by multiple errors made by her trial and appellate counsel, and that the presiding trial judge was a temporary appointment who was new and inexperienced.  (*Id.* at 29-31.)  Plaintiff's 440 motion was denied by Defendant Judge Hansbury on April 14, 2010 (Anspach Decl. Ex. 4), and Plaintiff has not brought a habeas petition pursuant to 28 U.S.C. § 2254.

[8] Plaintiff further explains that Judge Cerrato was the same judge who, at a previous court appearance, "had yelled in 2007 'get the hell out of my courtroom' when [Plaintiff] calmly compared the Westchester DA's actions to be akin to the Duke lacrosse case."  (Compl. 7.)

unnumbered sub-tab.)  According to Lonesome, Plaintiff "did intentionally scream and yell in the middle of an open session" of the court, "refused to exit the courtroom" after being ordered to do so by Judge Cerrato, and was generally disorderly and disruptive of the court's proceedings.  (*Id.*)  Lonesome stated that when he "attempted to escort [Plaintiff] out of the court, [she] continued to yell and refuse to leave"; he then informed Plaintiff that she was under arrest and told her to place her hands behind her back; and, "[i]n response to this lawful order by [Lonesome], [Plaintiff] began swinging her arms and struck [Lonesome] in the neck" to prevent him from escorting her from the courtroom.  (*Id.*)

In the afternoon on December 4, 2009, Plaintiff was arraigned on these charges by Defendant Judge Martinelli in case No. 09-7246.  (Compl. Ex. K; Compl. 8.)  Plaintiff alleges that at the bail hearing, Judge Martinelli "banned" her from the entire Yonkers City Courthouse without giving a reason or a hearing.  (Compl. 8; OSC unnumbered page 4.)  The transcript indicates that Defendant Judge Martinelli stated that he was going to release Plaintiff on her "own recognizance on the specific condition that [she] stay away from the Court except on [her] scheduled court dates."  (Compl. Ex. K, at 3.)  Plaintiff alleges that this alleged "ban" violates her First Amendment and due process rights, especially because she believes that both her arrest and the "ban" were in retaliation for articles that she had previously written about matters before the court.  (OSC unnumbered pages 7, 9.)[9]  Plaintiff claims that because the "ban" was made by an oral order at the hearing, it is not appealable, but in any event she did not appeal this order.

---

[9] Plaintiff also alleges that these actions were taken in retaliation for her serving a federal court action "four weeks prior" on October 23, 2009, on the "'Westchester DA and her underlings' along with a Yonkers judge," for malicious prosecution, extortion, equal protection violations, and subornation of perjury.  (Compl. 6, 9, 13.)  The Court is not aware of any federal action filed or served on that date naming those individuals.

(Compl. 9.)  Plaintiff further asserts that the "ban" prevents her from accessing her numerous case files.  (*Id.* at 13.)

On April 15, 2010, Defendant Judge Martinelli issued a memorandum regarding "People v. Shereen Bobrowsky, Docket #09-7246," that he directed be circulated to all court personnel, advising that "the condition for the release of Shereen Bobrowsky on her own recognizance in the above-referenced criminal court case, namely that she stay away from the Court except on her scheduled court dates, is rescinded.  Ms. Bobrowsky is to be given the same access as any other public citizen entering the building."  (Anspach Decl. Ex. 6.)

### 4.  Transfer of Plaintiff's Cases to White Plains Court

On December 22, 2009, Defendant Justice Scheinkman, "pursuant to the authority vested in him as Administrative Judge of the Ninth Judicial District," assigned Plaintiff's pending 440 motion in case No. 06-4495 to Defendant Judge Hansbury – a judge sitting in City Court of White Plains – as an Acting Yonkers City Court Judge, until disposition, "upon the recusals of all Yonkers City Court Judges."  (Compl. Ex. M2.)[10]  On January 27, 2010, Defendant Judge Hansbury set a return date for the 440 motion to be fully submitted for decision on February 16, 2010.  (Compl. Ex. M5.)  On January 7, 2010, "[u]pon the recusal and disqualification of all Yonkers City Court Judges," Defendant Justice Scheinkman also transferred the new criminal case, No. 09-7246, arising from Plaintiff's December 4, 2009 arrest, to White Plains, and

---

[10] Plaintiff appears to allege that Defendant Justice Scheinkman should not have addressed her 440 motion, because she had previously alleged a conflict in Defendant Justice Scheinkman's handling of the earlier appeal of her conviction.  Therefore "[t]o decide any motions would not be proper since [Plaintiff] did enter the letter/motion for removal from [her] case."  (OSC unnumbered pages 5-6.)  However, Defendant Justice Scheinkman was not removed from hearing Plaintiff's earlier criminal appeal, and, moreover, he did not decide Plaintiff's 440 motion; instead, he transferred it out of Yonkers.

ordered that all the papers from that action be delivered to White Plains City Court, again in his capacity as Administrative Judge of the Ninth Judicial District.  (Compl. Ex. M4.)  On January 13, 2010, Defendant Judge Hansbury sent Plaintiff a letter attaching Defendant Justice Scheinkman's order and directing Plaintiff to appear at City Court of White Plains on January 28, 2010 for the criminal case.  (*Id.*)

On February 16, 2010, Plaintiff appeared before Defendant Judge Hansbury on the new criminal charge in No. 09-4725.  (Compl. Ex. R.)[11]  The Court does not know why the date of the proceeding changed from January 28, 2010, to February 16, 2010.  The transcript indicates that at the proceeding, Plaintiff informed Defendant Judge Hansbury that she had tried to remove that case to federal court, and provided him with a copy of the motion.  (Compl. Ex. R at 3.)[12]  As Plaintiff did not have a lawyer, Defendant Judge Hansbury gave her until March 3, 2010, to find one, and instructed her to return to court on that date.  (*Id.* at 4.)  At that point, Plaintiff brought up her 440 motion, and Defendant Judge Hansbury at first stated that he did not know if that motion was in his court, and then indicated that it was still in Yonkers City Court.  (*Id.* at 4, 6.)  When Plaintiff raised the issue of her court files and "ban" from the Yonkers courthouse,

---

[11] Although it is not exactly clear, it appears that when case No. 09-7246 was transferred from Yonkers to White Plains, it was assigned a new case number, No. 09-4725, which Defendant Judge Hansbury wrote on his January 13, 2010 letter to Plaintiff (Compl. Ex. M4), and appears on the transcript in the subsequent proceeding before Defendant Judge Hansbury, (Compl. Ex. R).

[12] On January 7, 2010, it appears that Plaintiff tried to file a motion to remove her pending state criminal case to federal court; according to Plaintiff, the motion was date-stamped but not filed because she did not have the required filing fee (and it was not assigned a docket number).  Plaintiff also attached this putative motion to her Complaint in this case as Exhibit T.  In the putative motion, Plaintiff referred to the case she was seeking to remove as No. 09-7246, but as explained *supra* note 11, the Court believes this is the same case that the White Plains court refers to as No. 09-4725.

Defendant Judge Hansbury again advised Plaintiff that she should obtain a lawyer to help deal with these issues.  (*Id.* at 4-5.)  A Westchester County Assistant District Attorney stated that the file may have been transferred from Yonkers to White Plains but that he was not sure, and that there was confusion over a removal order.  (*Id.* at 6.)  Plaintiff asked for more time to reply to the Westchester County District Attorney's opposition to her 440 motion, and Defendant Judge Hansbury again advised Plaintiff to get an attorney.  (*Id.* at 7.)

Defendant Judge Hansbury denied Plaintiff's 440 motion on April 14, 2010 (after Plaintiff initiated the instant action), finding that despite Plaintiff's assertion to the contrary, there was no "'newly discovered evidence'" to warrant vacating her conviction.  (Anspach Decl. Ex. 4.)  Defendant Judge Hansbury further declined to modify the five-year 5/23/08 Protective Order imposed by Defendant Judge Martinelli – despite Plaintiff's claim that the protective order was a nullity because she, and not her mother, owned the property – because he concluded that the law did not require a protected victim to have title in the premises which she occupies, and thus Plaintiff's "contention that the Order of Protection could not have validly protected her mother without demonstration of her mother's legal title in the premises is without merit."  (*Id.*)[13]

Plaintiff asserts that "[e]ach time [she] enter[s] to remove a judge[,] that judge first enters a harmful decision," and that "[t]he Westchester judges refuse to do anything against Posner despite the crimes he committed," because Posner has indicated "that he has the goods on various judges so no judge will charge him."  (Compl. 35.)  Plaintiff does not specify to which judges she is referring in these statements, nor does she explain when or how any judge had an

---

[13] The Court has not been advised whether Plaintiff has appealed this decision.

opportunity to charge Posner, or "do anything against" him, but refused.  Plaintiff also alleges

that "many judges recused themselves sua sponte as having business and/or personal

relationships with Posner"; that "[p]olitical campaign contributions also created the appearance

of impropriety"; and that Posner had "deceiv[ed] the court system."  (OSC unnumbered page

10.)  Again, the details supporting these allegations are wanting.

### 5.  The August 2009 Incident

Plaintiff also alleges that on August 11, 2009, she appeared before Justice Nicholas

Colabella for a scheduled conference in Westchester Supreme Court on a matter related to the

property title issues, and requested that the court hold a conference, order depositions, and revise

a previous court order striking the invalid deed filed by Posner, that purportedly erroneously

omitted the required control number.  (Compl. 11-12.)  According to Plaintiff, Justice Colabella

responded by "stat[ing] that 'he was not god and that [Plaintiff's] time in the sun was over,'"

followed by the court officers grabbing Plaintiff's arms and physically dragging her out of the

courtroom.  (*Id.* at 12.)  Once outside, Plaintiff claims that one of the officers said that he had

been the court officer for Judge Liebowitz – whom Plaintiff had previously had recused from a

case because of a financial conflict (*id.* at 22) – and that the officer's unspecified boss had

instructed him to remove her and "to follow [Plaintiff] the remainder of the day that [she] stayed

in the court," (*id.* at 12).  According to Plaintiff, the officer followed her for three hours until she

left, and intimidated and harassed her in the court library.  (*Id.* at 12, 22.)  Thus, Plaintiff is

requesting that this Court obtain, or help her obtain, all the video surveillance from the

Westchester Supreme Court on that date.  (*Id.* at 12.)  However, this incident seems unrelated to

the other claims presented here, and has nothing to do with the moving Defendant judges.  If

Plaintiff wishes to bring an action against other individuals, that is a decision for her to make.

B.  Procedural Background

Plaintiff initially filed her Complaint on March 9, 2010, naming "'The Yonkers Courthouse' (its staff, Clerks, and all those who caused the recusal of the Court and all Judges) and unknown John Does necessary for requested relief" as Defendants.  (Dkt. No. 1.)  The case was originally assigned to the Honorable John G. Koeltl, and was reassigned to this Court on March 11, 2010.  (Dkt. No. 2.)  On March 16, 2010, the Court received Plaintiff's ex parte motion for a preliminary injunction and temporary restraining order, which also had been dated March 9, 2010, and held an ex parte hearing with Plaintiff.  The Court issued an order on March 16, 2010 dismissing Plaintiff's motion without prejudice and instructing her that she could re-file the motion if she served the individuals she wished to enjoin.  (Dkt. No. 3.)

On March 29, 2010, Plaintiff filed affidavits of service for Defendants Judge Martinelli, Justice Scheinkman, and Judge Hansbury.  (Dkt. No. 5.)[14]  On April 15, 2010, the Court denied Plaintiff's application for a temporary restraining order and preliminary injunctive relief without prejudice.  (Dkt. No. 10.)  On May 18, 2010, Defendants filed the instant motion to dismiss. (Dkt. No. 21.)  On June 28, 2010, counsel for Defendants informed the Court that Plaintiff had not responded to Defendants' motion to dismiss; accordingly, the Court directed Plaintiff to respond to the motion to dismiss by July 9, 2010, or the Court would decide the motion on its merits, without Plaintiff's input.  (Dkt. No. 31.)  As Plaintiff has not submitted opposition papers

---

[14] Plaintiff has never amended her Complaint to change the original caption.  Because Plaintiff served these three judges in response to the Court's order directing Plaintiff to serve the individuals she wished the enjoin, and recognizing Plaintiff's pro se status, the Court will assume that Plaintiff intends to amend her Complaint and add these judges as individually-named defendants, or have them be the "judges" to which she refers in the existing caption.

or responded to the Court's directive, the Court has decided the pending motion based on

Defendants' motion papers and Plaintiff's Complaint and attached exhibits.[15]

## II.  Discussion

The instant motion seeks dismissal for lack of jurisdiction pursuant to Federal Rule of

Civil Procedure 12(b)(1).  Additionally, Defendants argue that dismissal is proper on *Younger*

---

[15] As already noted, on January 7, 2010, Plaintiff appears to have tried to file a petition in this federal district to remove the pending state criminal case arising from her December 4, 2009 arrest.  (Compl. Ex. T.)  According to Plaintiff, the motion was stamped, but not filed, because she did not have the required filing fee.  Although Plaintiff attached this document to her Complaint filed on March 9, 2010, this putative removal motion was never filed in this action. Subsequently, Plaintiff filed another petition to remove this same state criminal case, which was assigned to Chief Judge Loretta A. Preska.  *See* Petition for Removal, *Bobrowsky v. People of the State of New York*, No. 10-CV-7260 (S.D.N.Y. filed Sept. 21, 2010).  On September 21, 2010, Chief Judge Preska dismissed Plaintiff's petition based on *Johnson v. Mississippi*, 421 U.S. 213 (1975) and *Younger v. Harris*, 401 U.S. 37 (1971), and remanded the case to the City of Yonkers Criminal Court.  *Bobrowsky v. People of the State of New York*, No. 10-CV-7260, slip op. at 2-3 (Dkt. No. 3) (S.D.N.Y. Sept. 21, 2010).

In addition, Plaintiff has filed at least two other cases in federal court, arising from many of the same events, and raising many of the same issues, as those described in her Complaint in this action.  In 2007, Plaintiff filed a complaint against the City of Yonkers, the Yonkers Corporate Counsel, Porcari, the Yonkers Criminal Court, Judge Wood, the Yonkers Police Department, Renzi, the Westchester Family Court, Judge Klein, the Westchester County District Attorney's Office, and two Assistant District Attorneys, seeking declaratory and injunctive relief including an order from the federal court modifying the outstanding protective orders against her and allowing her to access her home.  Complaint, *Bobrowsky v. City of Yonkers*, No. 07-CV-8817 (S.D.N.Y. filed Oct. 12, 2007).  In 2008, Judge Robinson dismissed Plaintiff's claims based on *Younger* abstention, finding that Plaintiff had "ample recourse available to her in the state courts," and that there were not present the type of "extraordinary circumstances" necessary to warrant federal court action.  *Bobrowsky v. City of Yonkers*, No. 07-CV-8817, slip op. at 6-8 (Dkt. No. 17) (S.D.N.Y. May 16, 2008).

In 2008, Plaintiff filed another complaint against the City of Yonkers, the Yonkers Assessment Department, Posner, the Judicial Title Insurance Agency, the Yonkers Police Department, Renzi, Jacques, and Lillian, again alleging many of the same factual events, and asserting some of the same legal claims, that are alleged in the instant action.  Complaint, *Bobrowsky v. City of Yonkers*, No. 08-CV-11302 (S.D.N.Y. filed Dec. 30, 2008).  In 2011, Judge Owen granted the defendants' motions to dismiss and dismissed Plaintiffs' complaint with prejudice.  *Bobrowsky v. City of Yonkers*, No. 08-CV-11302, slip op. at 4 (Dkt. No. 77) (S.D.N.Y. Mar. 24, 2011).

abstention grounds, as well as pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) the Defendants are entitled to absolute judicial immunity, and (2) Plaintiff has not alleged facts sufficient to state a claim upon which relief can be granted.

A.  Standard of Review

When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *Adamu v. Pfizer, Inc.*, 399 F. Supp. 2d 495, 500 (S.D.N.Y. 2005).  That said, under both Rule 12(b)(1) and Rule 12(b)(6), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (internal quotation marks omitted).  The party asserting jurisdiction, in this case Plaintiff, has the burden of showing by a preponderance of the evidence that the Court has jurisdiction.  *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). Furthermore, when considering a motion to dismiss a pro se complaint, the court must interpret the complaint liberally to raise the strongest claims that the allegations suggest.  *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (noting that courts should hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)).  However, mere "conclusions

15

of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed. 1984)).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" (alteration and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (holding that district court properly took judicial notice of and considered

16

media reports, state court complaints, and regulatory filings on a motion to dismiss); *Ackerman v. Local Union 363*, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006) ("The court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to, or incorporated by reference in the complaint."). In the motion to dismiss context, however, the court should generally take judicial notice "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Here, Plaintiff has attached numerous exhibits to her Complaint, and the Court has considered them in deciding the instant motion. In addition, the Court has taken judicial notice of, and considered, certain documents filed in state court that Defendants have submitted as exhibits with their motion to dismiss, as cited above.

B.  Protective Orders and State Conviction

As noted, a Westchester Family Court judge issued the 6/23/06 Protective Order requiring Plaintiff to stay away from Lillian and Lillian's bedroom. (Compl. Ex. B.) On October 17, 2007, Plaintiff was convicted of violating this protective order, and on May 4, 2009, her conviction was affirmed on appeal. (Anspach Decl. Ex. 1.) As part of Plaintiff's sentence, on May 23, 2008, Defendant Judge Martinelli ordered Plaintiff to stay away from her mother and her mother's residence for five years (the 5/23/08 Protective Order). (Compl. Ex. I.) Construing Plaintiff's pleadings liberally, as the Court is required to do, Plaintiff is asking this Court to void the 5/23/08 Protective Order because it bars Plaintiff from the house which she has been found to legally own. (Compl. 18; Compl. Ex. J, at 1.) Although not entirely clear, it also appears that Plaintiff is asking this Court to vacate her state conviction for criminal contempt, on the grounds that (1) the conviction was for violating the original protective order, which was

unconstitutionally vague, and (2) it was based on Posner's fraud, as discovered by new evidence after her trial.  (Compl. 25-28.)  Defendants argue that the Court lacks subject matter jurisdiction to hear these claims under the *Rooker-Feldman* doctrine.  (Mem. of Law in Opp'n to the Mot. for a Prelim. Inj. and in Supp. of State Defs.' Mot. to Dismiss the Compl. ("Defs.' Mem.") 4-5.)

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted).  *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923).  This is because Congress has, pursuant to 28 U.S.C. § 1257, "vest[ed] authority to review a state court's judgment solely" in the United States Supreme Court.[16] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Spickerman v. Carr*, No. 04-CV-6226, 2006 WL 140714, at *6 (W.D.N.Y. Jan. 17, 2006) ("Essentially, the *Rooker-Feldman* doctrine bars collateral attack on a state court judgment which attempts to cloak the attack as a § 1983 action in federal court." (internal quotation marks omitted)).

In *Exxon Mobil*, the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal law suits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that *Exxon Mobil* narrowed the Second Circuit's previously "expansive" interpretation of the *Rooker-Feldman* doctrine).

---

[16] Habeas review is a notable exception to this jurisdictional rule.  *See* 28 U.S.C. § 2254(a); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, n.8 (2005).

After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out

> four requirements that must be met before the *Rooker-Feldman* doctrine applies:
> 'First, the federal-court plaintiff must have lost in state court.  Second, the
> plaintiff must complain of injuries caused by a state-court judgment.  Third, the
> plaintiff must invite district court review and rejection of that judgment.  Fourth,
> the state-court judgment must have been rendered before the district court
> proceedings commenced-i.e., *Rooker-Feldman* has no application to federal-court
> suits proceeding in parallel with ongoing state-court litigation.'

*Green*, 585 F.3d at 101 (alterations and internal quotation marks omitted) (quoting *Hoblock v.*

*Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)); *see also Phillips*, 453 F. Supp. 2d

at 713 (noting that prior to *Exxon Mobil*, the Second Circuit "had incorrectly interpreted

*Rooker-Feldman* to encompass and even supersede ordinary preclusion principles").  The first

and fourth requirements are "procedural" and the second and third requirements are

"substantive."  *Hoblock*, 422 F.3d at 85.  If a claim meets all four requirements, the Court will

dismiss it pursuant to *Rooker-Feldman*.

Here, the Court concludes that it lacks subject matter jurisdiction to hear Plaintiff's

request to void the 5/23/08 Protective Order and her conviction entered by the New York state

courts because the four *Rooker-Feldman* factors are satisfied.  The first requirement – that the

federal plaintiff lost in state court – is plainly met under the facts of Plaintiff's case.[17]  Plaintiff

---

[17] Although the Second Circuit initially stated in *Hoblock* that "the parties in the state and federal suits must be the same," *Hoblock*, 422 F.3d at 89, courts have interpreted this language to require common identity between the plaintiff in the federal action and the party defeated in the state court action, not that a plaintiff may avoid *Rooker-Feldman* simply by adding new or different defendants in the federal action.  *See Rotering v. Amodeo*, No. 07-4357-cv, 2009 WL 579138, at *1 (2d Cir. Mar. 6, 2009) (summary order); *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.*, 652 F. Supp. 2d 463, 469 (S.D.N.Y. 2009) (explaining that *Rooker-Feldman* requires that "the party defeated in state court must share a common identity with the federal plaintiff").  Indeed, the *Hoblock* court itself, in applying the *Rooker-Feldman* doctrine to the case at bar, described this requirement as "common identity between the state and federal plaintiff[]."  *Hoblock*, 422 F.3d at 89.

lost in state court when she was convicted on October 17, 2007.  Plaintiff also lost when Defendant Judge Martinelli issued the 5/23/08 Protective Order requiring Plaintiff to stay away from her mother and the property.  Indeed, Plaintiff's state court 440 motion seeking to overturn her conviction and the 5/23/08 Protective Order was a collateral attack on a final decision.[18]  Thus, the conviction and protective order are both final state court judgments for purposes of the *Rooker-Feldman* doctrine.  *See Phillips*, 453 F. Supp. 2d at 713 (finding that Family Court child removal order had become final for purposes of the *Rooker-Feldman* doctrine despite ongoing parental rights termination proceedings); *cf. Green*, 585 F.3d at 103 (noting that *Rooker-Feldman* would bar claim seeking review of final order permanently removing a plaintiff's child).[19]  The fourth requirement is also satisfied, as there is no question that Plaintiff was convicted on October 17, 2007, and the protective order was entered on May 23, 2008, both prior to Plaintiff commencing this suit on March 9, 2010.

The second *Rooker-Feldman* requirement, that the plaintiff complains of injuries caused by a state court judgment, is "the core requirement" of *Rooker-Feldman*.  *Hoblock*, 422 F.3d at

---

[18] The fact that Plaintiff had a pending 440 motion at the time she filed the instant action does not affect the finality of the judgment for *Rooker-Feldman* purposes.  *See Galtieri v. Kelly*, 441 F. Supp. 2d 447, 458 n.9 (E.D.N.Y. 2006) (noting that state court judgment was final under *Rooker-Feldman* even though the state-court appeal was pending).

[19] In *Green*, the Second Circuit held that a plaintiff who claimed injuries from a temporary restraining order of the Family Court that removed her child from her home, which order was then revised four days later by the same court, was not barred by the *Rooker-Feldman* doctrine because the plaintiff was not a "state court loser," and the plaintiff's claim, which sought damages for the four-day removal, did not seek federal court review of a state court "judgment."  *Green*, 585 F.3d at 102.  The Second Circuit emphasized that plaintiff's claim was based on an "interlocutory, unappealable" order that had subsequently been reversed by the state court, but that the *Rooker-Feldman* doctrine *would* have applied if the plaintiff had instead "appealed a final order of disposition permanently removing plaintiff's child from her custody."  *Id.* at 103.

87.  But, "a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court"; in other words, the simple assertion of a constitutional claim does not create an independent injury if the plaintiff's injury is caused by the state court judgment.  *Id.* (noting that if a state court terminated a plaintiff's parental rights, the plaintiff could not avoid *Rooker-Feldman* by asserting in federal court that the decision violated his due process rights).

Here, Plaintiff's alleged injury clearly arises out of her state court conviction and the issuance of the state court's 5/23/08 Protective Order, as Plaintiff claims that her constitutional rights were violated by her conviction and the order, which keeps her from accessing her property.  *See id.* (noting that if a plaintiff alleged in federal court that a state court order terminating his parental rights was unconstitutional, "he is complaining of an injury caused by the state judgment"); *Sindone v. Kelly*, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006) (noting that the "causal requirement may be satisfied . . . where, as in *Feldman*, the state court itself is the decision-maker whose action produces the injury the plaintiff challenges in the federal suit").

The third requirement is also met here, as Plaintiff is clearly inviting this Court to review and reject the state court's judgment, as she is asking the Court to vacate her conviction for violating the 6/23/06 Protective Order, which she claims was unconstitutionally vague and invalidated based on "new evidence" discovered after her trial, specifically that Posner committed fraud and that Plaintiff was declared the legal owner of the property.  (Compl. 28.) She also seeks vacatur of her sentence imposed by the state court, the 5/23/08 Protective Order, which she claims is "a nullity."  (*Id.* at 18.)  This Court simply cannot do.  *See Rotering v. Amodeo*, No. 07-4357-cv, 2009 WL 579138, at *2 (2d Cir. Mar. 6, 2009) (summary order) (noting that a plaintiff's claim is barred, assuming the other requirements of *Rooker-Feldman* are

21

met, when "the district court would need to review and reject the state court's denial of" the plaintiff's relocation petition); *Green*, 585 F.3d at 103 (noting that a plaintiff cannot seek, pursuant to § 1983, review and rejection of a Family Court ruling that could have been appealed to the higher New York state courts).[20]  If Plaintiff wanted to overturn the 5/23/08 Protective Order, she could have appealed it, as she appealed her judgment of conviction.  *See People v. Nieves*, 811 N.E.2d 13, 16-17 (N.Y. 2004) (holding that "permanent orders of protection entered upon conviction under CPL 530.13(4) are among the orders and rulings that a defendant may challenge in an appeal from the judgment of conviction" (alteration and internal quotation marks omitted)); *see also People v. Kunieczny*, 813 N.E.2d 626, 628 (N.Y. 2004) ("[A] permanent order of protection issued at the conclusion of a criminal action is appealable as part of the judgment of conviction.").[21]  Indeed, Plaintiff did specifically challenge the five-year 5/23/08

---

[20] The fact that Plaintiff alleges that the 6/23/06 Protective Order was obtained through the fraud of Posner does not defeat the applicability of *Rooker-Feldman*.  *See O'Donnell v. United States*, No. 05-CV-713, 2007 WL 983311, at *4 (N.D.N.Y. Mar. 30, 2007) ("[T]he fact that Plaintiff alleges fraud does not make the *Rooker-Feldman* doctrine inapplicable.").

[21] The 5/23/08 Protective Order is still considered permanent even though it was to expire after five years.  As the *Nieves* court explained, "[o]rders issued upon conviction are characterized as 'permanent' to distinguish them from the temporary orders that may be issued pursuant to CPL 530.13(1) while the criminal action is pending."  *Nieves*, 811 N.E.2d at 15 n.1.  In addition, such orders issued upon conviction may not exceed statutorily-prescribed durations. *See* N.Y. Crim. Proc. Law § 530.13(4).
    The Court notes that the 5/23/08 Protective Order was issued pursuant to CPL § 530.12, which addresses protection for victims of family offenses specifically.  This section provides that "[u]pon conviction of any crime or violation between . . . parent and child . . . the court may in addition to any other disposition . . . enter an order of protection."  N.Y. Crim. Proc. Law § 530.12(5).  However, New York courts have concluded that the reasoning of *Nieves* regarding the appealability of orders of protection for non-family members under § 530.13 applies equally to orders entered under § 530.12.  *See People v. Whalen*, 852 N.Y.S.2d 482, 483 n.1 (App. Div. 2008) (noting that although the *Nieves* decision "specifically considered permanent orders of protection for nonfamily members issued pursuant to CPL 530.13, we find no basis to conclude that its determination as to appealability would not also apply to orders of protection issued in favor of family members pursuant to CPL 530.12").

Protective Order in her 440 motion.  (Compl. Ex. J.)  And, as noted earlier, Plaintiff asserts that

various forms of prejudice and improper conduct occurring during and after her trial warrant

reversal of her conviction.  (Compl. 28-31.)  If Plaintiff wished to raise these issues and

challenge her state court conviction in this Court, the proper procedural vehicle to do so was

through a habeas petition, which the Court has not construed the present action to be for a

variety of reasons.  *See Book v. Tobin*, No. 04-CV-442, 2005 WL 1981803, at *3 (D. Conn. Aug.

16, 2005) ("What plaintiff seeks is collateral review of his criminal conviction.  While his claims

could have been raised on direct appeal, or, during the period when he remained in custody, in a

state or federal habeas petition, this § 1983 suit is an improper procedural vehicle.").

Thus, all of the requirements of the *Rooker-Feldman* doctrine are met with respect to

Plaintiff's request for this court to void or vacate her state court conviction and the protective

order entered against her, and accordingly the Court lacks jurisdiction over those claims.

C.  Bail Condition

In her Complaint, Plaintiff also asks the Court to void the bail condition imposed by

Defendant Judge Martinelli, requiring her to stay away from the court except on her scheduled

court dates, as a violation of the First Amendment, the ADA, due process, and equal protection.

(Compl. 1-2.)[22]  On April 15, 2010, Judge Martinelli issued a memorandum explicitly rescinding

this bail condition, and advising that Plaintiff was to be given the same access to the courthouse

as any other public citizen.  (Anspach Decl. Ex. 6.)  This memorandum was to be circulated to

all court personnel.  (*Id.*)  Plaintiff has not alleged that she has since been improperly denied

_____

[22] To the extent Plaintiff is seeking to sue Defendant Judge Martinelli personally for
banning her from the courthouse, and not just seeking to have the condition revoked, that claim
is barred by judicial immunity, as explained *infra* Section II.E.1.

access to the courthouse.[23]   Accordingly, Plaintiff's request to have this Court void the bail

condition, is denied as moot.[24]

> D.  Removal of Plaintiff's State Criminal Case and Associated Hearings to Federal Court

Defendants also argue that some of Plaintiff's claims for relief are barred by the *Younger*

abstention doctrine.  (Defs.' Mem. 8-9.)  In her Complaint, Plaintiff seeks "an order removing all

'Yonkers' originating matters to federal court on First Amendment grounds and due process

grounds having exhausted all state remedy."  (Compl. 2.)  Thus, Plaintiff appears to be asking

the Court to hear all of her pending actions that arose in Yonkers City Court.  The Complaint

---

[23] In addition, from what the Court can tell from Plaintiff's Complaint, Plaintiff has not requested damages resulting from being "banned" from the courthouse during the time between the imposition of the initial condition and its rescission.

[24] If the condition had not been rescinded, there is reason to doubt this Court's jurisdiction, under *Rooker-Feldman*, to consider Plaintiff's challenge to the bail condition.  The Second Circuit has suggested that *Rooker-Feldman* might not apply if a plaintiff "had neither a practical reason nor a legal basis to appeal the state-court decision that caused her alleged injuries." *Green*, 585 F.3d at 103.  Although Plaintiff claims she was told she could not appeal Judge Martinelli's order because it was an oral decision, New York law appears to allow Plaintiff to appeal city court bail orders to a judge of a superior court.  *See generally* N.Y. Crim. Proc. Law § 530.30.  And there is some authority suggesting that challenges to state court bail orders are barred by *Rooker-Feldman*.  *See Moore v. Delling*, No. 08-CV-12508, 2008 WL 4534194, at *2 (E.D. Mich. Oct. 3, 2008) (holding that to grant the requested relief, the court "would be obligated to conclude that the state court decision, about which [plaintiff] has complained, was incorrect . . . [and] a review of the challenged bail amount would be the equivalent of an appellate review of a state court decision, over which th[e] [c]ourt lack[ed] jurisdiction").

The rest of the Second Circuit's *Rooker-Feldman* requirements would be met here.  The bail condition was set prior to Plaintiff filing this action; Plaintiff is complaining of an injury that is directly caused by Defendant Judge Martinelli's order – namely the violation of her First Amendment right to public access to the courthouse, and that she could not access her court files; and Plaintiff was explicitly requesting the Court to review, reject, and overturn Defendant Judge Martinelli's order.  *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 515 (E.D.N.Y. 2010) ("The [*Rooker-Feldman*] doctrine only applies when 'the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment.'" (quoting *McNamara v. Kaye*, 360 F. App'x 177, 177 (2d Cir. 2009) (summary order))).

discusses two such matters – the criminal case arising from Plaintiff's December 4, 2009 arrest,
and Plaintiff's 440 motion.  Plaintiff also asks the Court to order that hearings be held regarding
her various claims.  (*Id.*)  Although the 440 motion was pending when Plaintiff filed this action
on March 9, 2010, this motion was subsequently denied by Defendant Judge Hansbury on April
14, 2010.  (Anspach Decl. Ex. 4.)  Accordingly, the 440 motion is no longer pending, and there
is nothing for this Court to hear.[25]  The pending criminal case is also before Judge Hansbury.
However, as discussed *supra* note 15, Plaintiff's request to remove her pending state criminal
case arising from her December 4, 2009 arrest was never actually filed in this action, and, in fact,
was already considered and rejected by Chief Judge Preska in a separately filed federal action,
*see Bobrowsky v. People of the State of New York*, No. 10-CV-7260 (S.D.N.Y. dismissed Sept.
21, 2010).  Therefore, the exact relief that Plaintiff is requesting from this Court has already been
denied, and the Court will not disturb Chief Judge Preska's decision.

Moreover, the Court reiterates for Plaintiff's benefit that this Court is prevented from
interfering in Plaintiff's ongoing criminal proceeding pursuant to *Younger v. Harris*, 401 U.S. 37
(1971).[26]  In *Younger*, the Supreme Court held that federal courts "in the interest of comity,
should abstain from hearing a case that would interfere with an on-going state criminal
proceeding."  *Kunz v. N.Y. Comm'n on Judicial Conduct*, 356 F. Supp. 2d 188, 192 (N.D.N.Y.
2005) (citing *Younger*); *see also Spargo v. N.Y. Comm'n on Judicial Conduct*, 351 F.3d 65, 74-

---

[25] Plaintiff's 440 motion sought to vacate her underlying conviction for violating the
6/23/06 Protective Order.  As already discussed, if Plaintiff wished to have a federal court
review her challenge to this conviction, the proper vehicle would be a timely habeas petition.

[26] This principle has already been explained to Plaintiff in judicial opinions issued in
three of Plaintiff's other federal actions.  *See* No. 07-CV-8817 (Dkt. No. 17); No. 08-CV-11302
(Dkt. No. 69); No. 10-CV-7260 (Dkt. No. 3).

75 (2d Cir. 2003) (noting that *Younger* abstention is grounded in principles of comity and federalism and that "[b]oth considerations require federal courts to be cognizant that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." (internal quotation marks omitted)).

"*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spago*, 351 F.3d at 75. The Second Circuit has held that *Younger* is inapplicable to § 1983 claims seeking money damages, but *Younger* abstention continues to apply to claims for injunctive relief brought pursuant to § 1983. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 196 n.2 (2d Cir. 2002); *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001) (per curiam). Here, Plaintiff has not mentioned money damages at any point; instead, she is seeking to have this Court intervene in her ongoing state criminal proceedings.

The *Younger* requirements are all met here. Plaintiff's criminal contempt case is currently pending in state court, and it implicates an important state interest because "it is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one." *Hansel v. Town Court for Town of Springfield*, 56 F.3d 391, 393 (2d Cir. 1995); *see also Rolle v. McCarthy*, No. 02-CV-4398, 2005 WL 5885366, at *4 (E.D.N.Y. June 21, 2005) ("The administration of criminal justice in the state courts of New York is undoubtedly an important state interest . . . ."). And, despite Plaintiff's asserted difficulties in Yonkers City Court, she has simply not demonstrated that there is not adequate opportunity for review of her federal constitutional claims in the state court system. The Yonkers judges, who Plaintiff claims are biased and prejudiced against her, have recused themselves from Plaintiff's case, which has

26

been transferred to a White Plains judge.  If Plaintiff is unhappy with the outcome of her case in

state court, she may appeal it through the state court appellate system, as she did with her

conviction for violating the 6/23/06 Protective Order.  The state courts are more than capable of

hearing Plaintiff's asserted federal constitutional claims, and in fact, "*Younger* generally

prohibits courts from taking jurisdiction over federal constitutional claims that involve or call

into question ongoing state proceedings."  *Spargo*, 351 F.3d at 75 (internal quotation marks

omitted).  Likewise, the Court will not become involved in which state judge hears Plaintiff's

case.  *See Kunz*, 356 F. Supp. 2d at 194 (noting that a federal court should abstain under *Younger*

rather than "supervise . . . the process of [state] judicial assignments").[27]

---

[27] The Second Circuit has noted that "[d]espite the strong policy in favor of abstention, even where *Younger* would otherwise apply, a federal court may still intervene in state proceedings if the plaintiff demonstrates bad faith, harassment or any other unusual circumstance that would call for equitable relief."  *Spargo*, 351 F.3d at 75 n.11 (internal quotation marks omitted).  "[F]or a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome[,] . . . [and the] federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  *Diamond "D"*, 282 F.3d at 199 (internal quotation marks omitted).  "It is the plaintiff who has the burden of establishing that the bad faith exception applies."  *Wilson v. Emond*, No. 08-CV-1399, 2009 WL 1491511, at *2 (D. Conn. May 28, 2009).  For the extraordinary circumstances exception to apply, the state court must be "incapable of fairly and fully adjudicating the federal issues before it," and, "whatever else is required, such circumstances must be extraordinary in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation."  *Diamond "D"*, 282 F.3d at 201 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975)) (internal quotation marks omitted).

Here, Plaintiff has failed to allege facts that would support applying either of these *Younger* exceptions.  Despite Plaintiff's conclusory claims of bad faith and retaliation by Yonkers judges, there is no indication that Plaintiff cannot receive a fair and full adjudication of her criminal case before Defendant Judge Hansbury.  While the facts here certainly "present[] a highly unusual factual situation," there is no extraordinary pressing need for immediate federal equitable relief because Plaintiff may present any constitutional claims in her case pending before Judge Hansbury, a state judge who, despite his inclusion as a Defendant in this action, is not alleged to have any bias or motivation to retaliate against Plaintiff.  If Plaintiff disagrees with the outcome of her state court case, she will be free to appeal to higher state courts and present her constitutional claims.  "Where such state remedies are available, 'a federal court should

Accordingly, to the extent Plaintiff is requesting the Court to take control of, oversee, or order hearings in her ongoing state court case, that claim for relief is denied.

E.  Claims Against Judicial Defendants

Defendants Judge Martinelli, Justice Scheinkman, and Judge Hansbury are the only specific parties that Plaintiff has served in this action.[28]  It is unclear from the Complaint precisely what claims Plaintiff is seeking to assert against each of these judges.  Nonetheless, Defendants maintain that the Complaint against them must be dismissed pursuant to the doctrine of absolute judicial immunity.  (Defs.' Mem. 5-8.)  Based on the facts Plaintiff has alleged, the Court agrees.

It is "well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages."  *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam); *see also Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam).  This immunity is "from suit, not just from ultimate assessment of damages."  *Mireles*, 502 U.S. at 11.  Injunctive relief is also barred by the 1996 Congressional amendments to § 1983, which "provide that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'"  *Montero*, 171 F.3d at 761 (quoting Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996)).  "Although unfairness and injustice

_____

assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'"  *Diamond "D"*, 282 F.3d at 202 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

[28] Because these judges are the only persons Plaintiff has served, given Plaintiff's pro se status, the Court assumes Plaintiff intends them to be named Defendants in this action.

to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 10 (internal quotation marks omitted); *see also Forrester v. White*, 484 U.S. 219, 223 (1988) (noting that judges threatened with personal liability for their official duties "may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct . . . [and that] exposing [judges] to the same legal hazards faced by other citizens may detract from the rule of law instead of contributing to it").

Moreover, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11. "[I]mmunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11 (emphasis and citations omitted); *see also Gross v. Rell*, 585 F.3d 72, 82 (2d Cir. 2009) ("Even judicial immunity, which provides judges with very broad protection, may be overcome if the judge acts in the clear absence of all jurisdiction or if he is not acting in his judicial capacity.").

"[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself," such as "whether it is a function normally performed by a judge," and "whether [the parties] dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). A "court acts in the absence of all jurisdiction when it does not have any statutory or constitutional power to adjudicate the case." *Gross*, 585 F.3d at 84 (emphasis and internal quotation marks

29

omitted).  The Supreme Court has emphasized that "[i]f judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or was in excess of his authority."  *Mireles*, 502 U.S. at 12-13 (internal quotation marks omitted) (finding that the state court judge's order to police officers to bring the plaintiff into the courtroom using excessive force would exceed his authority, but was still protected by judicial immunity because ordering the court officer to bring the plaintiff to court "is a function normally performed by a judge").

### 1.  Defendant Judge Martinelli

Plaintiff alleges that Defendant Judge Martinelli: (1) sentenced Plaintiff on May 23, 2008, after she was convicted of violating the 6/23/06 Protective Order, and improperly issued a new order of protection ordering Plaintiff to stay away from Lillian and Lillian's house (Compl. Ex. I); and (2) presided over Plaintiff's arraignment on December 4, 2009, where he released Plaintiff on the improper condition that she stay away from the Court except for her scheduled court dates (Compl. Ex. K, at 3), which Plaintiff believes was in retaliation for articles she had written criticizing the court, (OSC unnumbered page 9).

These actions are protected by judicial immunity.  To the extent Plaintiff is suing Defendant Judge Martinelli for sentencing her or issuing the 5/23/08 Protective Order, a judge's decision to sentence a convicted defendant, or to issue a protective order, is clearly a judicial function, and there is no serious allegation that Defendant Judge Martinelli lacked all jurisdiction to issue the orders in the criminal case pending before him.  *See Tota v. Ward*, No. 07-CV-26, 2008 WL 619163, at *3 (W.D.N.Y. Mar. 3, 2008) ("There is no dispute that [the defendant judge] had jurisdiction to issue an Order of Protection.  The dispute is whether he did so properly.  But whether he did or did not, [the judge] is nonetheless protected from suit by the

doctrine of judicial immunity."); *Vanguilder v. Giardino*, No. 05-CV-2033, 2005 WL 1229742, at *1 (E.D.N.Y. May 23, 2005) (holding that judge was entitled to immunity where the "plaintiff's allegations against [the defendant judge] all ar[o]se out of the [j]udge's actions during plaintiff's criminal proceedings").

In addition, the "stay away" bail condition imposed by Defendant Judge Martinelli has been rescinded, and in any event, the "setting of bail w[as] plainly [a] judicial act[]." *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997); *see also Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) ("Ordinarily, it is judges who set bail, and judges enjoy absolute immunity when they do so." (citations omitted)). Plaintiff has also made no allegation that Defendant Judge Martinelli acted in the clear absence of jurisdiction when setting a bail condition for a defendant in a criminal case pending before him. *See generally* N.Y. Uniform City Ct. Act § 2001(1) (stating that city courts have jurisdiction over criminal matters); N.Y. Crim. Proc. Law § 530.10, *et seq.* (describing standards for setting of bail by New York judges, including those sitting in local criminal courts). Moreover, "a judge acts in his judicial capacity when he exercises control over his courtroom, and by extension, when he bars a litigant or attorney from the courtroom." *Levine v. Lawrence*, No. 03-CV-1694, 2005 WL 1412143, at *6 (E.D.N.Y. June 15, 2005); *see also Huminski v. Corsones*, 396 F.3d 53, 77-78 (2d Cir. 2005) (holding that a plaintiff excluded from a courtroom did have a viable First Amendment claim, but dismissing claims against judges because they "have substantial power to maintain the decorum and security of their courtrooms and the courthouses in which those courtrooms are located"); *Glavin v. Restaino*, No. 05-CV-477, 2006 WL 5646214, at *3-4 (W.D.N.Y. Mar. 26, 2006) (noting that judge was immune from suit for holding defendants in criminal contempt and adding new bail conditions

for alleged uncooperative conduct in courtroom), *aff'd*, 210 F. App'x 122 (2d Cir. 2006) (summary order).

Even assuming that Defendant Judge Martinelli acted in excess of his authority or erroneously in setting the particular bail condition at issue, "that does not mean that he acted in the absence of all jurisdiction, particularly when his actions are 'taken in the very aid of the judge's jurisdiction over a matter before him.'" *Levine*, 2005 WL 1412143, at *7 (emphasis omitted) (quoting *Mireles*, 502 U.S. at 13). And, despite Plaintiff's allegation that the bail condition was set as retaliation for her previous articles and criticisms of the court, judges are immune from suit "however erroneous the act and however evil the motive." *Bliven v. Hunt*, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005), *aff'd*, 579 F.3d 204 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209; *see also McKnight v. Middleton*, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010) (noting that allegations that judge's rulings were motivated by discrimination or "retaliation for [the p]laintiff's filing of [a] lawsuit against the court and others" could not defeat judicial immunity).

Again, the bail condition has been rescinded; therefore, no injunctive relief is necessary. Yet, even if it had not been rescinded, this Court would not be able to issue an injunction against Defendant Judge Martinelli, because Plaintiff has not alleged that Defendant Judge Martinelli violated a declaratory decree or that declaratory relief would not be available. *See Montero*, 171 F.3d at 761. If Plaintiff believed that the bail condition was in error, Plaintiff was free to attempt to correct the mistake within the New York state court system. *See generally* N.Y. Crim. Proc. Law § 530.30(1)(c) (stating that when a criminal matter is pending in a local criminal court, a superior court judge may order recognizance or bail when the local criminal court "[h]as fixed bail which is excessive").

32

2.  Defendant Justice Scheinkman

The allegations involving Defendant Justice Scheinkman are that: (1) he was one of the three judges who affirmed Plaintiff's conviction on appeal on May 4, 2009 (Anspach Decl. Ex. 1), although Plaintiff alleges that she had asked Defendant Justice Scheinkman not to handle the appeal due to an alleged conflict (OSC unnumbered page 5); and (2) "pursuant to the authority vested in him as Administrative Judge of the Ninth Judicial District," he assigned Plaintiff's pending 440 motion and new criminal case on December 22, 2009, and January 7, 2010, respectively, to Defendant Judge Hansbury in White Plains, as an Acting Yonkers City Court Judge, upon the recusal of all of the Yonkers judges.  (Compl. Exs. M2, M4.)

To the extent Plaintiff is suing Defendant Justice Scheinkman with regard to his alleged earlier refusal to recuse himself, her claim is barred by judicial immunity because a judge's decision to recuse (or not to recuse) is also a judicial act and Justice Scheinkman's decision was not made in the absence of jurisdiction.  *See Sylvester v. Sorrell*, No. 08-CV-88, 2009 WL 819383, at *3 (D. Vt. Mar. 25, 2009) (deciding that judge's refusal to recuse himself was judicial act entitled to immunity); *Haynes v. Schimelman*, No. 99-CV-2553, 2000 WL 502623, at *1 (D. Conn. Mar. 8, 2000) (concluding that judge's decision not to recuse was covered by judicial immunity).

Defendant Justice Scheinkman's decision to refer the 440 motion and state criminal case to the City Court of White Plains, because all of the Yonkers City Court judges recused themselves, is also a judicial act done in furtherance of the court's jurisdiction to resolve the dispute and to control its docket.  *Cf. Huminski*, 386 F.3d at 139 ("A court's control of its docket is also a judicial act because it is part of a court's function of resolving disputes between parties." (internal quotation marks omitted)); *Book*, 2005 WL 1981803, at *2 (finding that a

33

judge's alleged failure to ensure that a notice of appeal and transcript were sent to the plaintiff were "adjudicative, discretionary decisions which, like a court's management of its docket, are part of its function of resolving disputes between the parties" (internal quotation marks omitted)).

The Court notes that judges generally are not immune for "administrative decisions, even though they may be essential to the very functioning of the courts." *Bliven*, 579 F.3d at 210 (internal quotation marks omitted).  However, "the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Id.*  Put another way, when a judge's decision involves a particular case, the judge's act is a "function normally performed by . . . judge[s]." *Stump*, 435 U.S. at 362.  Here, Defendant Justice Scheinkman did not alter the administrative rules for the transfer of all cases in the courts he might supervise.  Rather, he made a decision, as a judge, to transfer a particular case – Plaintiff's – to another court.  By performing this typically judicial function, Defendant Justice Scheinkman was entitled to immunity.  *Cf. Morrison v. Lipscomb*, 877 F.2d 463, 465-66 (6th Cir. 1989) (finding that the chief judge's moratorium on the issuance of writs of restitution was an administrative, not judicial, act because the moratorium was general and not connected to any particular case).  Indeed, New York courts have specifically held that administrative judges are cloaked with judicial immunity for their decisions to transfer cases.  *See Rosenstein v. State*, 829 N.Y.S.2d 93, 94 (App. Div. 2007) (concluding that alleged wrongdoing of administrative judges, court officers, and clerks in "transferring and rescheduling" landlord/tenant dispute was cloaked with judicial immunity).  Therefore, the Court finds that Plaintiff's claims against Defendant Justice Scheinkman should be dismissed.

3.  Defendant Judge Hansbury

Plaintiff's 440 motion and pending state criminal case were transferred to Defendant Judge Hansbury.  (Compl. Exs. M2, M4.)  Although Plaintiff alleges that Defendant Judge Hansbury refused to hear her 440 motion, the public record indicates that at the February 16, 2010 hearing Defendant Judge Hansbury was confused as to whether that motion had actually been transferred to him (Compl. Ex. R), and he has since heard and decided the motion, (Anspach Decl. Ex. 4).

Therefore, Defendant Judge Hansbury did not refuse to hear Plaintiff's 440 motion. Moreover, even if he had at first refused to hear Plaintiff's motion despite the transfer, such a decision was also done in his judicial capacity and within his jurisdiction to decide the pending motion and to control his docket.  *See Kampfer v. Scullin*, 989 F. Supp. 194, 200 (N.D.N.Y. 1997) (noting that a judge was immune from suit for the alleged "fail[ure] to provide a date and time for the plaintiffs to be heard on their motion [and] fail[ure] to rule on that same motion in an ongoing case in which he was the designated trial judge").  Accordingly, Defendant Judge Hansbury's motion to dismiss is granted.

In sum, all of the acts Plaintiff complains of involve orders or decisions of judges acting within their judicial capacity and within their jurisdiction.[29]  Such "rulings . . . despite being adverse to plaintiff, are the very essence of 'judicial functions' and cannot, therefore, be the

---

[29] Plaintiff does allege that the 6/23/06 Protective Order entered by the Family Court was "issued based on an ex parte deed allegation for which it lacked subject matter jurisdiction." (Compl. 10.)  Plaintiff has not offered any facts that would demonstrate that the protective order was actually issued without jurisdiction, and in any event, Judge Klein, who entered the protective order, is not named as a defendant in this action.  Plaintiff has given no indication that any of the three Judges named as Defendants in this case took any action for which he lacked jurisdiction, and, for reasons described above, the *Rooker-Feldman* doctrine likely would deprive this Court of jurisdiction to resolve any challenge to the 6/23/06 Protective Order.

35

basis for liability." *Williams v. Jurow*, No. 05-CV-6949, 2007 WL 5463418, at *10 (S.D.N.Y.

June 29, 2007), *adopted as modified by* No. 05-CV-6949, 2008 WL 4054421 (S.D.N.Y. Aug. 28,

2008).[30]  Accordingly, all of the actions attributed to the named Defendant Judges are protected

by judicial immunity, and Defendants are entitled to dismissal of the Complaint against them.

F.  ADA Claim

Plaintiff repeatedly mentions that she is a disabled person, and asserts that her action is

brought pursuant to the ADA.  Defendants assert that any ADA claim should be dismissed

pursuant to Rule 12(b)(6), because Plaintiff has failed to plead "any factual allegations regarding

her alleged disability"; what actions, if any, were taken against her because of her disability; or

"what services or activities, if any, [] the courts and/or judges are refusing to provide [P]laintiff

on account of her alleged disability."  (Defs.' Mem. 10-11.)

Construing the Complaint liberally, Plaintiff appears to be alleging a violation of Title II

of the ADA, which mandates that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  In order to state a violation of Title II, Plaintiff must allege that: (1) she is a

qualified individual with a disability; and (2) she is being excluded from participation in, or

being denied the benefits of some service, program, or activity of a covered entity by reasons of

her disability.  *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004); *Atkins v.*

---

[30] This remains the case even though Plaintiff has raised allegations that the original
protective order may have been facilitated by Posner's fraud.  *Cf. Greene v. Wright*, 389 F. Supp.
2d 416, 427 (D. Conn. 2005) (allegation that judge violated defendant's constitutional rights by
allowing a prosecution to go forward "when informed that [the alleged victim] was extorting
money from [the defendant] [did] not suggest the absence of jurisdiction").

*Cnty. of Orange*, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003).  The second prong requires the disabled plaintiff to allege that her mistreatment "was motivated by either discriminatory animus or ill will due to disability."  *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001).  This animus requirement reflects the purpose of Title II, which is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."  *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

Here, Plaintiff states that she is a disabled person, and refers to a neck injury, but does not ever allege that she is a qualified individual under the ADA.  Moreover, even assuming arguendo that Plaintiff has alleged facts sufficient to meet the first requirement, she has utterly failed to allege that she was excluded from participation in, or denied the benefits of any service, program, or activity *because* of her disability, and the Complaint is completely devoid of facts, or even allegations, that any purported mistreatment was motivated by discriminatory animus or ill will based on her disability.  Therefore, Plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face," and accordingly, her ADA claim must be dismissed.  *Twombly*, 550 U.S. at 570.

### G.  Remaining Claims

The Court notes that throughout this action, Plaintiff has continually submitted additional letters and putative motions referring to events not discussed in her Complaint, raising new potential causes of action, and claiming that she has "emergencies" requiring immediate intervention of this Court.  In fact, in her initial Complaint, Plaintiff specifically mentioned her supposed "reservation of rights to add issues not yet added as they commence."  (Compl. 2.)  That is not the way civil litigation works in any court.  Plaintiff filed a Complaint, which Defendants responded to in their motion to dismiss (which Plaintiff did not answer).  Defendants

37

have fairly expressed their concern that "Plaintiff seems to believe that every interaction she has

had with any state or city court in a variety of her ongoing court proceedings are all legitimate

issues to be included in her federal lawsuits," of which at least four have been filed in the last

three-and-a-half years, and, that "[b]y referencing every conceivable interaction [P]laintiff has

had with court personnel and others, [P]laintiff does not present a cogent issue to be addressed

by this Court, but a moving target that prevents [D]efendants from responding in a definitive

fashion to any issue." (Letter from Susan Anspach, Counsel for Defs., to the Ct. (Apr. 30, 2010)

(Dkt. No. 14).) If Plaintiff believes she has additional allegations to add to her Complaint – or

claims that have not been denied already in this or another federal action – she may seek to file

an amended complaint, or file a new action, instead of attempting to supplement her claims

through improper submissions, and serve the proper parties accordingly.[31]

### III.  Conclusion

Plaintiff's Complaint against Defendants Judge Martinelli, Justice Scheinkman, and

Judge Hansbury is dismissed with prejudice.  To the extent Plaintiff's Complaint asks the Court

---

[31] Plaintiff has also asked the Court to remove the New York State Attorney General from defending the Defendant Judges, due to an alleged conflict of interest, because the Attorney General's office supposedly is assisting Plaintiff with certain complaints she has filed. (Compl. 2.) However, Defendants' counsel has represented to the Court that the Judges named as Defendants in this action are not implicated in Plaintiff's allegations, and that "[n]either the [D]efendant [J]udges nor their respective determinations are the subject of any investigation by the Attorney General." (Letter from Susan Anspach, Counsel for Defs., to the Ct. (Apr. 30, 2010) (Dkt. No. 14).) Having been presented with no evidence that any conflict exists, the Court declines to remove the Attorney General from representing these Defendants. *See Bernstein v. Appellate Div. First Dep't Disciplinary Comm.*, No. 07-CV-11196, slip op. at 1 (Dkt. No. 7) (S.D.N.Y. Mar. 10, 2008) (concluding that "the Attorney General does not face an improper conflict of interest in representing" state defendants, including judges, despite the plaintiffs' contention that the Attorney General was conflicted because the plaintiffs had "requested that he investigate the allegations underlying this action and because they believe he will be called upon to investigate related allegations as they are exposed"). (A copy of this unpublished order in the *Bernstein* case is attached to this Opinion and Order for Plaintiff's benefit).

38

to vacate her state court conviction or the state court protective orders issued against her, or to remove or otherwise interfere in any of her ongoing state court proceedings, those claims are dismissed with prejudice, as is Plaintiff's ADA claim. The Clerk of Court is respectfully directed to terminate the pending motion. (Dkt. No. 21.) Plaintiff is given thirty days to amend her Complaint to add any additional parties she believes should be named consistent with this opinion.[32]

SO ORDERED.

DATED:      White Plains, New York
            April 8 , 2011

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[32] This dismissal is not meant to bar Plaintiff from bringing other actions against people not named herein (or in Plaintiff's other lawsuits) for claims that may be brought in federal court.

39

<u>Service List (For Mailing by the Clerk's Office)</u>:

Shereen Bobrowsky
P.O. Box 1305
Bronx, NY 10471
*Pro Se Plaintiff*

Susan Anspach, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
(212) 416-8548
Fax: (212) 416-6075
Email: susan.anspach@ag.ny.gov
*Counsel for Defendants*